## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

**RICHARD HOBGOOD**                                                    **PETITIONER**

**VERSUS**                          **CIVIL ACTION NO.  3:08CV24 HTW-LRA**

**CHRISTOPHER EPPS**                                                   **RESPONDENT**

### MEMORANDUM OPINION

Before the Court is the habeas petition of state prisoner, Richard Hobgood.

Petitioner Hobgood was convicted of sexual battery of a child in the Circuit Court of

Hinds County, Mississippi, and was sentenced to life in the custody of the Mississippi

Department of Corrections.  He now seeks federal habeas relief under 28 U.S.C. § 2254.

The Court finds Petitioner is not entitled to federal habeas corpus relief for the reasons

that follow.

### Factual and Procedural Background

For approximately one year, from June 1, 2000, until June 27, 2001, Petitioner,

then age 28, lived with his girlfriend who had two minor children.  Although the children

lived with their maternal grandmother, Jane Doe,[1] for a period of time, their mother

regained custody at some point.  During that time, Petitioner sexually abused her five-

year-old son. His younger sister was 15 months old. The relevant facts are described in

more detail in the state court's opinion as follows:

---

[1] The state court used a fictitious name to identify the grandmother in order to protect the victim's identity.

On June 28, 2001, Christine Cooke was baby-sitting the victim and his sister while staying at Doe's home. The victim, who was 5 years of age at that time, approached Cooke and asked if he could tell her a secret. He then proceeded to describe to Cooke how Hobgood forced him to lie on the bed and performed anal sex on him, something which the victim called "bad medicine." Cooke then called Doe and informed her that she needed to return home. When Doe arrived, Cooke asked the victim to tell Doe what he had told her, and he repeated the story "word-for-word."

Doe and Cooke took the victim to see psychotherapist Denise Detotto. Detotto spoke individually with each of them about the victim's allegations and then directly questioned the victim.  When asked, the victim told Detotto that:

Ricky Hobgood had been giving him bad medicine.  When I asked what he meant by that he said that Mr. Hobgood would have him pull his pants down and he would put his thing in his bootie, that there would be water and that Mr. Hobgood would then wipe off the water with a towel.

Detotto testified that the victim told her it happened frequently and that it was painful. She also testified that the victim was told to do "bad medicine" to his younger sister.

*Hobgood v. State*, 926 So.2d 847, 850, *reh'g. denied* May 4, 2006 (Miss. 2006).

Following the meeting with Detotto, the victim was examined by emergency room pediatrician, Dr. Gowdagere Srinath, who testified the victim gave a vivid description of the abuse, which included a demonstration of a humping movement. *Id.*  He also testified that the victim's physical examination revealed "decreased anal tone, which was consistent with the description of abuse the victim had given him." *Id.*  The victim was also interviewed by Jackson Police Department Officer Jay Albright and Detective Carnell Kitchens.

Petitioner appealed his conviction and sentence to the Mississippi Supreme Court, alleging the trial court committed the following seven errors:

1.    allowing hearsay evidence under the tender years exception, M.R.E. 803(25);

2.      ruling that the alleged victim was unavailable pursuant to M.R.E. 804;

3.      allowing the State to bolster its case with "double hearsay";

4.      allowing a State expert witness to vouch for the credibility of the alleged victim;

5.      allowing expert opinion testimony in the area of child sexual abuse;

6.      precluding the defense to present evidence on the grounds that it was irrelevant and not presented during voir dire;

7.      sentencing Petitioner to life imprisonment without a hearing and without giving him the opportunity to present mitigating evidence, and without considering any other penalty.

The Mississippi Supreme Court affirmed Petitioner's conviction and sentence in a written opinion on March 23, 2006, and denied his petition for rehearing on May 4, 2006. *Id*. After rehearing was denied, Petitioner filed a petition for writ of certiorari in the United States Supreme Court, which was denied on January 8, 2007. Petitioner did not file a state court motion for post-conviction relief. He now seeks federal habeas corpus relief under 28 U.S.C. §2254. As grounds for relief, Petitioner argues as follows:

Ground One:  Conviction obtained by a violation of the "Confrontation Clause" of 6th Amendment & 14th Amendment of the U.S. Constitution.

Ground Two:  Conviction obtained by a violation of the "Due Process" clause of the 5th &14th Amendments to the United States Constitution.

### Standard of Review

The Court's review of Petitioner's claims for federal habeas relief is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. Under the Act,

3

federal habeas corpus relief cannot be granted for any claim that was adjudicated on the

merits in a state court proceeding, unless the adjudication:

> (1)     resulted in a decision that was **contrary to, or involved an unreasonable application of, clearly established Federal law**, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an **unreasonable determination of the facts in light of the evidence** presented in the State court proceeding.

(Emphasis added) 28 U.S.C. § 2254(d).

Under the first prong, the clauses "contrary to" and "unreasonable application of"

are independent bases for granting federal habeas relief.  *Williams v. Taylor*, 529 U.S.

362, 405 (2000).  A state court's decision is "contrary to" federal law if it contradicts

Supreme Court precedent or reaches a different result on materially indistinguishable

facts.  *Id.*  Under the "unreasonable application" clause, a federal habeas court may grant

relief if the state court "correctly identifies the governing legal principle" but then

"unreasonably applies it to the facts of the particular case."  *Bell v. Cone*, 535 U.S. 685,

694 (2002).  The state court's decision must be objectively unreasonable, not merely

erroneous or incorrect.  *Rompilla v. Beard*, 545 U.S. 374, 380 (2005).

AEDPA's second prong requires that federal courts defer to a state court's factual

determinations unless they are based on an "unreasonable determination of the facts in

light of the evidence presented in the State court proceeding."  *Hill v. Johnson*, 210 F.3d

481, 485 (5th Cir. 2000).  Deference is critical because federal courts have no authority to

grant habeas corpus relief simply because "we conclude, in our independent judgment,

that a state supreme court's application of [federal] law is erroneous or incorrect."

*Catalan v. Cockrell*, 315  F.3d 491, 493 (5th Cir. 2002).   We presume the state court's

determination of a factual issue is correct, unless a petitioner rebuts the presumption with

clear and convincing evidence.   28 U.S.C.  §2254 (e)(1).

## Discussion

Petitioner raises two primary grounds for federal habeas relief.  In ground one, he

contends his right to confront witnesses was violated.  In ground two, he argues his due

process rights were violated because the trial court: (1) allowed the psychotherapist to

attest to the victim's credibility; (2) excluded evidence concerning the unkempt condition

of the home; and, (3) imposed a life sentence without a jury finding.

### Ground One: Confrontation Clause Violation

In his first ground for relief, Petitioner claims the trial court violated his Sixth

Amendment right to confront his accuser when it admitted hearsay statements under

Mississippi's tender years exception to the hearsay rule.[2]  The victim had given

---

[2]  M.R.E. 803 (25) provides as follows:

> A statement made by a child of tender years describing any act of
> sexual contact performed with or on the child by another
> is admissible in evidence if: (a) the court finds, in a hearing
> conducted outside the presence of the jury, that the time, content,
> and circumstances of the statement provide substantial indicia of
> reliability; and (b) the child either (1) testifies at the proceedings;
> or (2) is unavailable as a witness: provided, that when the child is
> unavailable as a witness, such statement may be admitted only if
> there is corroborative evidence of the act.

statements describing the abuse to his grandmother, babysitter, psychotherapist, pediatrician, Officer Albright and Detective Kitchens.  All of these individuals were permitted to testify at trial regarding what the victim had told them about the abuse. Based on testimony from his psychotherapist that the victim would suffer emotional harm if called to testify, the victim was declared unavailable under M.R.E. 804(a)(6).[3]

In rejecting Petitioner's confrontation clause claim on direct appeal, the state court principally relied on the Supreme Court's decision, *Crawford v. Washington*, 541 U.S. 36 (2004).  *Crawford* held that testimonial out-of-court-statements are inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness about the statements.  *Id.* at 68.  Although the *Crawford* Court declined to "spell out a comprehensive definition of 'testimonial,'" the Court explained that at a minimum, it applies to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.*   Unlike nontestimonial hearsay, "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an

_____

[3]   M.R.E. 803 (a)(6) provides in part as follows:

(a) Definition of Unavailability.  "Unavailability as a witness" includes situtations in which the declarant:

(6) In the case of a child, because of the substantial likelihood that the emotional or psychological health of the witness would be substantially impaired if the child had to testify in the physical presence of the accused.

6

acquaintance does not." *Id*. at 51.  Thus, "[s]tatements taken by police officers in the course of interrogations," like the one at issue in *Crawford*, must be considered testimonial "under any definition" or "under even a narrow standard." *Id*. at 52.

Applying the above rationale, the Mississippi Supreme Court found no error in the admission of testimony from the victim's grandmother, babysitter, pediatrician, and psychotherapist, because the victim's statements to these individuals were all nontestimonial.  Relying on *Crawford* and recent state court precedent, the Court reasoned that a statement is testimonial "when it is given to the police or individuals working in connection with the police for the purpose of prosecuting the accused." *Hobgood*, 926 So.2d 852, citing *Clark v. State*, 891 So.2d 136, 140 (Miss. 2004) and *Burchfield v. State*, 892 So.2d 191, 202 (Miss.  2004).  Unlike Officer Albright and Detective Kitchens, these individuals were not working in connection with the police to prosecute the accused, so the admission of their testimony was not testimonial under *Crawford*.   The court explained:

> These individuals were not working in connection with the police.
> Further, their statements were not made for the purpose of aiding in the
> prosecution. There was a previous relationship between the victim and Doe
> and Cooke. The victim's unsolicited statements were made to them for the
> sake of his well-being and not for the purpose of furthering the
> prosecution. The same can be said of statements to Detotto and Srinath.
> While no previous relationship existed, the purpose of these statements was
> to seek medical and psychological treatment.  The victim was taken to
> Detotto and Srinath at the family's request and not sent there by police to
> further their investigation. Had the police directed the victim to seek
> treatment from a doctor and a therapist for the purpose of discovering
> evidence to aid in the investigation then it might be possible for the
> statements to implicate the Confrontation Clause.

*Hobgood*, 926 So.2d at 852.

The Court finds this analysis to be a fair and reasonable application of *Crawford v. Washington*.  The victim's statements to these individuals do not fall into any of the categories of testimonial statements identified in *Crawford*.[4]  These individuals were relatives, friends, and medical professionals concerned with the victim's well-being and treatment.[5]  Following *Crawford*, a number of lower federal and state courts have ruled that statements made by victims to medical professionals or friends and family are not testimonial.  *See e.g., Doan v. Carter*, 548 F.3d 449, 458 (6th Cir. 2008) (victim's statements to family and friends regarding abuse she had received from petitioner nontestimonial).  *See also Commonwealth v. DeOliveira,* 849 N. E. 2d 218 (Mass.  2006) (concluding that statements made to a physician by a child victim of sexual assault describing the nature of the assault were nontestimonial); *State v. Vaught*, 682 N. W.  2d 284 (Neb.  2004) (child victim's statements to emergency room physician describing abuse and identifying uncle as perpetrator was nontestimonial).

The victim's statements to these individuals also satisfy the pre-*Crawford* standard for determining the admissibility of nontestimonial statements established in *Ohio v.*

---

[4] One commentator has observed that "statements made to family, friends, and acquaintances without an intention for use at trial have consistently been held not to be testimonial, even if highly incriminating to another." Robert P.  Mostellar, *Crawford v. Washington: Encouraging and Ensuring the Confrontation of Witnesses,* 39 U.  Rich.  L.  Rev. 511, 540 (2005).

[5] *See Giles v. California*, 554 U.S. 353, 376 (2008) (stating in dicta, that statements to friends and neighbors about abuse and intimidation, and statements to physicians in the course of receiving treatment are not testimonial, and would only be excluded, if at all, by hearsay rules).

*Roberts*, 448 U.S. 56 (1980).  *See United States v.  Holmes*, 406 F.3d 337, 348 (5th Cir.

2005) (*Crawford* leaves in place the *Roberts* approach for determining the admissibility

of nontestimonial statements).  Under this standard, nontestimonial statements are

admissible if: (1) the statement "falls within a firmly rooted hearsay exception," or (2) it

bears other "particularized guarantees of trustworthiness."  *Roberts*, 448 U.S. at 66

(1980).  *See also Idaho v. Wright*, 497 U.S. 805, 820-21 (1990) (recognizing that hearsay

statements admitted under a "firmly rooted" hearsay exception, such as the excited

utterance and dying declaration exceptions, possess particularized guarantees of

trustworthiness which do not offend the guarantees of the Confrontation Clause).  The

nontestimonial statements in this case were admitted pursuant to Mississippi's firmly

rooted "tender years" hearsay exception.  Accordingly, the state court's determination

that the admission of these statements was not a violation of Petitioner's rights under the

Confrontation Clause was not contrary to, or an unreasonably application of, clearly

established federal law.

　　　　With regard to Officer Albright and Detective Kitchens, the state court found as

follows:

> 　　　　The statements testified to by Albright and Kitchens were
> testimonial and should have been excluded. Therefore, the trial court erred
> in admitting them. However, similar testimony was properly admitted from
> four other witnesses. Therefore, this testimony was duplicative, and the
> error is harmless.

*Hobgood*, 926 So.2d at 852.

The Court finds this reasoning comports with *Crawford's* instruction that statements to police officers should be considered testimonial. Officer Albright testified that he was dispatched to the hospital in response to a child-neglect call. Upon his arrival, he spoke with the social worker and the victim's grandmother, both of whom repeated what the victim had told them. He then asked the victim what happened, and the child responded that Petitioner had given him bad medicine a "lot of times." Detective Kitchens, who works in a special investigation unit assigned to child protection/sex crimes, also investigated the allegations of abuse in this case. Kitchens testified that when he questioned the victim, he responded that Petitioner had given him bad medicine. Though neither Albright nor Kitchens were conducting the formal "police interrogations" described in *Crawford*, both were questioning the victim for the primary purpose of investigating a crime. *Davis v. Washington*, 547 U.S. 813 (2006) (refining *Crawford's* holding that statements made during the course of police questioning are *per se* testimonial).[6] Although their testimony relaying these statements was erroneously

---

[6] Following *Crawford*, the Supreme Court revisited the distinction between testimonial and nontestimonial statements during police questioning in *Davis v. Washington*. Although the Court again declined to produce an exhaustive list of testimonial statements, *Davis* held that statements made during police questioning are nontestimonial when the circumstances objectively indicate that the primary purpose of the questioning is to enable the police to meet an ongoing emergency. Statements are testimonial when "the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822. Although *Davis* was decided after the Mississippi Supreme Court affirmed Petitioner's conviction, and was not part of the "clearly established Federal law" at that time, the court's decision comports with the reasoning in *Davis*.

admitted, the Court finds their testimony was cumulative and did not have a "substantial

or injurious effect" on the jury's verdict under *Brecht v. Abrahamson*, 507 U.S. 619, 631

(1993).  *See Fry v. Plier*, 551 U.S. 112 (2007).  No habeas relief is warranted on this

claim.

### Ground Two: Due Process Violations

**A.    *Petitioner's due process rights were not violated by the psychotherapist's testimony*.**

In ground two, Petitioner claims his due process rights were violated when the

trial court allowed the psychotherapist to attest to the victim's credibility.  At trial, the

psychotherapist testified as follows:

> Q.    Okay.  And during the disclosure that [the victim] made to you, did you find him credible?
>
> A.    Yes.
>
> Q.    Why?
>
> A.    Every time that-
>
> > BY MR.  WADE:    Your honor, I will object to her passing on the credibility of this witness.  I believe the Supreme Court has spoken to this.
> >
> > BY THE COURT:    She's making an observation.  Overruled.  It's subject to cross-examination.
> >
> > BY MS.  PURCELL: (Continuing)
>
> Q:    Why did you find him credible?
>
> A.    Every time that [the victim] discussed the above with me the details never changed.  They were consistent over an entire year's period.  And in addition to that, there was also physical evidence which was found.

Petitioner argues the above testimony deprived the jury of their role as the sole

judges of witness credibility.   He also claims that because the victim exhibited certain

maladaptive behaviors, including lying and cheating,[7] the psychotherapist should not have been permitted to vouch for his credibility.  As an example, Petitioner cites the fact that the victim initially described the water that appeared after the sexual acts as blue, but then later said it was white.  When questioned about this discrepancy at trial, the psychotherapist explained that the victim was developmentally delayed, and had not yet mastered his primary colors.

The state court considered this issue on direct appeal, and found no error in the admission of the psychotherapist's testimony regarding the victim's credibility.  The court explained that the psychotherapaist "did not cross the line" by stating the victim was telling the truth by directly commenting on the victim's veracity in violation of state court precedent.  *Hobgood* at 854.  She merely opined that the consistency of the victim's statements made him credible.  The court noted that the jury was also thoroughly instructed on their role as the sole judges of credibility.  The court stated:

> In the present case, Detotto never stated that the victim was telling the truth.  Rather she explained the consistency of the accounts he made to individuals, at different times, not in the presence of the others, and found them to be credible.  Hobgood contends that Detotto's testimony denied the jury its role as judge of credibility.  We disagree.  The jury heard Detotto's testimony along with five other witnesses.  The trial court thoroughly and correctly instructed the jurors regarding their role as the sole judges of the credibility of the witness and the weight their testimony deserved.  He specifically stated they "should consider each expert opinion received in evidence in this case and give it such weight as you may think it deserves."

*Hobgood,* 926 So.2d at 854.

---

[7]  Detotto also testified that the victim exhibited other maladaptive behaviors, including head banging, biting, and excessive masturbation.

State evidentiary rulings do no warrant federal habeas relief unless they violate a specific constitutional right or render the trial fundamentally unfair as to violate due process. *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999).   To warrant habeas relief due to an admissibility error, a petitioner must show the error resulted in actual prejudice. *See Brecht,* at 637.   There must be "more than a mere possibility that [the error] contributed to the verdict.  It must have had a substantial and injurious effect or influence in determining the verdict."  *Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)).  The evidence must have "played a 'crucial, critical, and highly significant' role in the jury's determination." *Jackson v.  Johnson*, 194  F.3d 641, 656 (5th Cir. 1999).

This Court finds no error warranting habeas relief in the admission of the doctor's testimony here.  In this Circuit, an expert's testimony that a sexual assault victim's behavior is consistent with the behavior of abuse victims is not inherently unreliable under *Daubert v. Dow Pharmaceuticals,* 509 U.S. 579 (1993).  *U.S. v. Simmons*, 470 F.3d 1115 (5th Cir. 2006) (finding on direct review that psychologist's testimony that the victim's behavior and testimony were consistent with sexual assault victims did not impermissibly intrude upon jury's fact-finding function).  "Mental-health experts are permitted to testify that 'symptoms and recollections appear [ ] genuine and that [the expert believes she or] he ha[s] not been 'duped' by a fabricated account."  *Id.* at 1124, quoting *Skidmore v. Precision Printing & Pkg., Inc*., 188 F.3d 606, 618 (5th Cir. 1999).

13

As in *Simmons*, the psychotherapist testified that the victim's behavior was consistent with that of sexual assault victims.  She opined further that the consistency of his statements and the physical evidence made him credible.  Her opinion did not "impermissibly intrude upon the jury's determination" of the victim's credibility.  *Id*.

Even if the Court were to find the credibility opinion was erroneously admitted, Petitioner was not prejudiced by the admission of this evidence.  Six witnesses testified that the victim repeatedly identified Petitioner as the one who sexually abused him. Notwithstanding his confusion regarding the colors, the victim described the abuse to each of these individuals in the same way every time.  Both doctors also testified that the victim's statements were consistent with abuse.   Dr. Srinath, who found physical evidence of abuse in his examination, testified that he found the victim's statements highly suggestive of abuse, explaining that for a five-year-old, the victim was very vivid in his description and was able to clearly and consistently describe a sexual encounter. The psychotherapist testified that the victim's maladaptive behaviors were not uncommon for children who have been sexually abused.

Given the testimony of these witnesses and the physical evidence corroborating the abuse, Petitioner has not shown that the pyschotherapist's testimony concerning the victim's credibility played a "crucial, critical and highly significant" role or substantially influenced the jury's verdict.

**B.    Petitioner's due process rights were not violated by the trial court's exclusion of evidence.**

Petitioner claims that his due process rights were violated when the trial court excluded certain evidence. At trial, Petitioner attempted to proffer evidence from his mother and two of his uncles concerning the unkempt condition of the victim's house – the inference being that the victim lied about the abuse so he could continue living with his grandmother. The trial court found this evidence was irrelevant, unfairly prejudicial, confusing and cumulative. The court also expressed its concern that the defense had not identified these witnesses in *voir dire*, so members of the jury were not given the opportunity to indicate whether they knew any of them.

This claim was considered and rejected by the Mississippi Supreme Court on direct appeal. Finding the issue was without merit, the court ruled that the unkempt condition of the home had no relevance to whether the sexual assault occurred, and agreed that the evidence was unnecessarily cumulative because the defense had "presented the same evidence or variations on it, at least three times." *Hobgood,* 926 So. 2d. at 856. The court explained:

> Hobgood's argument is without merit, and the trial court did not abuse its discretion in excluding the cumulative testimony. The trial court is afforded great deference whether to admit evidence. *Foster v. State*, 508 So.2d 1111, 1118 (Miss. 1987). This Court has long held that evidentiary rulings are within the trial judge's broad discretion and will only be reversed if the reviewing court perceives an abuse of that discretion. *Hentz v. State*, 542 So.2d 914, 917 (Miss. 1989). The primary premise for denying Hobgood's proffer was that it was cumulative. Hobgood presented the same evidence or variations on it, at least three times. Therefore, the additional testimony would have been cumulative, and the trial court was within its discretion when it denied Hobgood's proffer. *See Gray v. State*, 799 So.2d 53, 60-62 (Miss. 2001); *Gribble v. State*, 760 So.

15

2d, 790, 792-93 (Miss. 2000); *Alexander v. State*, 610 So.2d 320, 335-36 (Miss. 1992).

> Also, the unkempt nature of the home has no relevance to whether the sexual assault occurred. Hobgood exaggerates the severity of the trial court's decision. He claims that the trial court's ruling denied him the ability to call these witnesses simply because they were not on the witness list during voir dire. It is true that the trial court did state its concern that they were not on the list at that time, but made its decision based on the evidence to be presented. The rationale for excluding the testimony was its substance and not who was testifying to it.

*Id.*

As noted above, state evidentiary rulings do not warrant federal habeas relief unless they violate a specific constitutional right. Although Petitioner has a due process right to present witnesses on his behalf, the Court agrees that this evidence was irrelevant and unnecessarily cumulative. The proffered evidence was intended to create an inference that the victim lied about the abuse in order to live with his grandmother. The record reflects that three other witnesses testified that the victim wanted to live with his grandmother.[8] While Petitioner asserts that the excluded evidence may have bolstered the defense's argument, the jury clearly rejected the theory that the victim lied about the molestation to live with his grandmother. Petitioner cannot show the exclusion of this evidence had a "substantial and injurious effect in determining the jury's verdict." *Brecht*, 507 U.S. at 623.

---

[8] The babysitter testified that the victim appeared to be happy with his grandmother, and wanted to continue to live with his grandmother, not his mother. The grandmother testified that she provided the victim with stability and she did not think her daughter was a fit mother. The psychotherapist also testified that the victim wanted to continue to live with his grandmother.

**C.** *Petitioner's sentencing claim is procedurally barred from federal habeas review.*

Petitioner's final claim is that the trial court violated his due process rights when it imposed a life sentence without a jury finding.  This claim is procedurally barred under the procedural default doctrine.  Under this doctrine, federal courts are precluded from considering a habeas claim when the state court rejected the claim on an independent and adequate state law ground.  *Martin v.  Maxey*, 98 F.3d 844 (5th Cir.  1996).   To be adequate, a procedural bar rule must be "strictly or regularly" applied by the state to the "vast majority of similar claims." *Amos v.  Scott*, 61 F.3d 33, 339 (5th Cir. 1995).   In this case, the Mississippi Supreme Court found Petitioner's sentencing claim was procedurally barred because no contemporaneous objection was made at the time of sentencing.  *Hobgood*, 926 So.2d at 857.   The Fifth Circuit has long considered Mississippi's contemporaneous objection rule to be an independent and adequate state procedural bar that is regularly and consistently applied.  *Smith v. Black,* 970 F.2d 1383, 1387 (5th Cir. 1992) (noting that Mississippi's contemporaneous objection rule is regularly and consistently applied).  Petitioner has procedurally defaulted this claim.

When a habeas claim is procedurally barred, it may be considered on the merits by a federal court under two narrow exceptions:  "cause and actual prejudice" or "fundamental miscarriage of justice."  *See Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004), *cert. denied*, 543 U.S. 989 (2004); *Coleman v.  Thompson*, 501 U.S. 722, 750 (1991) (making this rule "explicit").  To establish cause, "there must be something

external to the petitioner, something that cannot be fairly attributed to him." *Coleman,* 501 U.S. at 753.  Examples of external impediments include "active government interference or the reasonable unavailability of the factual or legal basis for the claim." *Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997).

Petitioner asserts that the ineffectiveness of appellate counsel should serve as cause to excuse his procedural default.  In support, he claims that he asked appellate counsel to raise several issues of ineffectiveness of trial counsel on direct appeal, including trial counsel's failure to contemporaneously object at sentencing.  Despite appellate counsel's assurances that the issue would be raised, Petitioner claims when he received his copy of the appellate brief, this issue was excluded.

The ineffectiveness of appellate counsel constitutes "cause" to excuse a procedural default only if it has been properly presented and exhausted in state court as a separate and distinct claim for relief.  *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986) (exhaustion doctrine requires that ineffective assistance of counsel claim be presented to state courts as independent claim before it may be used to establish cause for procedural default.)   In this case, Petitioner acknowledges that he could have exhausted this claim by raising it in a motion for post-conviction relief in state court.  He suggests the effort would have been futile because the state court would have found the claim procedurally

barred under Miss. Code Ann. § 99-39-2(1).[9]  He offers no explanation for why he could

not have attempted to overcome the procedural bar by asserting, as he does here, that the

ineffectiveness of appellate counsel caused him to procedurally default this claim.  *See*

*Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) ("an ineffective assistance of counsel

claim asserted as cause for the procedural default of another claim can *itself* be excused if

the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim").

Petitioner cannot elect to bypass exhaustion merely because he fears the state courts

would not rule in his favor.   Exhaustion is a mandatory prerequisite for federal review.

Because Petitioner failed to give the state's highest court an opportunity to consider this

claim, it may not be considered by this Court.  *O'Sullivan v. Boerckel*, 526 U.S. 838

(1999).

For these reasons, appellate counsel's performance cannot suffice as "cause" to

excuse Petitioner's procedural default of his ineffectiveness of trial counsel claim.

Absent a showing of cause, this Court need not consider whether Petitioner suffered

actual prejudice.  *Martin*, 98 F.3d at 849.

---

[9] Miss. Code Ann. § 99-39-21(1) provides that:

> Failure by a prisoner to raise objections, defenses, claims,
> questions, issues or errors either in fact or law which were capable
> of determination at trial and/or on direct appeal, regardless of
> whether such are based on the laws and the Constitution of the
> state of Mississippi or of the United States, shall constitute a
> waiver thereof and shall be procedurally barred, but the court may
> upon a showing of cause and actual prejudice grant relief from the
> waiver.

Lastly, the Court finds that failure to consider the merits of the sentencing claim will not result in a fundamental miscarriage of justice.  To meet this exception, a petitioner must show he is actually innocent; that "as a factual matter, that he did not commit the crime of the conviction." *Fairman v. Anderson* , 188 F.3d 635, 644 (5th Cir. 1999).  A petitioner challenging his conviction must support his actual innocence claims with new, reliable evidence that was not presented at trial; he must show that "no reasonable juror would have convicted him in light of the new evidence." *Id*.   Here, Petitioner claims that both his conviction and sentence violate his constitutional rights. In *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992), the Supreme Court held a petitioner challenging his sentence in a capital case must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found him eligible for the sentence under applicable state law.  The Supreme Court has never extended *Sawyer* to non-capital sentences.  *See Dretke v. Haley*, 541 U.S. 386, 392 (2004) ("We are asked in the present case to extend the actual innocence exception to procedural default of constitutional claims challenging noncapital sentencing error. We decline to answer the question in the posture of this case . . .").

In any event, Petitioner does not assert that any new, reliable evidence would show, more likely than not, that a reasonable juror would not have convicted him.  Nor does he show that but for the alleged constitutional error, no reasonable juror would have

found him eligible for a life sentence.  He merely asserts that the trial court deprived him

of due process when it imposed a life sentence without a jury finding.

This claim was dismissed on its merits by the Mississippi Supreme Court on direct

appeal.  Appellate counsel had argued that the trial court erred when it sentenced

Petitioner to a life sentence without a jury finding in violation of the Mississippi Supreme

Court's decision in *Stewart v. State*, 372 So. 2d 257 (Miss. 1979).  *Hobgood,* 926 So.2d at

857.  *Stewart* held that the imposition of a life sentence is within the sole province of a

jury, and absent a jury recommendation of life imprisonment, a trial judge cannot impose

a life sentence.  Notwithstanding trial counsel's failure to contemporaneously object, the

court found appellate counsel's argument was incorrect.  Unlike the armed robbery statute

applicable in *Stewart*,  Mississippi's sexual battery statute does not contain language

requiring a jury finding to impose a life sentence.  *Id.*

In sum, Petitioner's final claim for habeas relief is barred from federal habeas

review.  The claim was dismissed by the Mississippi Supreme Court on an independent

and adequate state law ground, resulting in a procedural default.  Petitioner cannot rely on

appellate counsel's error to serve as cause to excuse this procedural default because he

failed to exhaust this claim in state court, nor can he show that failure to consider this

claim will result in a fundamental miscarriage of justice.  Habeas review is precluded on

this claim.

## Conclusion

For the reasons stated, the Court denies Petitioner's request for federal habeas relief under 28 U.S.C. § 2254 and dismisses this action with prejudice.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Petition for Writ of Habeas Corpus is denied.

**SO ORDERED, this the 31st day of March 2011.**


/s/ HENRY T.  WINGATE
UNITED STATES DISTRICT JUDGE


**CIVIL ACTION NO.  3:08CV24 HTW-LRA**
**Memorandum Opinion**

22